IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:16-CV-199-FL

| | |
|---|---|
| SIDNEY B. HARR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   ORDER |
| | ) |
| N. LORRIN FREEMAN; | ) |
| WAKE COUNTY, in the State of | ) |
| North Carolina, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on defendant N. Lorrin Freeman's motion to dismiss (DE 10), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff timely filed a response. The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, defendant Freeman's motion is granted.

## STATEMENT OF THE CASE

On April 26, 2016, pro se plaintiff filed this civil rights action against defendants Wake County and Freeman. (DE 1). Plaintiff alleges that defendant Freeman, in her position as district attorney of Wake County, North Carolina, deprived him of his civil rights under the United States Constitution by ignoring plaintiff's "many attempts to meet with and/or directly communicate with her regarding problems with the prosecution and unjust conviction and wrongful incarceration of [Crystal Gail Mangum], an African American female." (DE 1, 2–3). Plaintiff seeks injunctive relief related to Mangum's prosecution and conviction, as well as costs.

On June 20, 2016, defendant Freeman filed the instant motion to dismiss plaintiff's

complaint for lack of jurisdiction and failure to state a claim, pursuant to Rules 12(b)(1) and (6), as well as the common law doctrine of collateral estoppel.  (DE 10).  Defendant Freeman argues that plaintiff lacks standing because his generalized grievances state no injury-in-fact, and he lacks third-party standing to bring this action on behalf of Mangum.  In addition, defendant Freeman argues that the Rooker-Feldman doctrine and collateral estoppel doctrine bar plaintiff from raising anew issues related to the Mangum prosecution trial, when those issues were addressed conclusively by the Durham County Superior Court.  Lastly, defendant Freeman argues that she is entitled to the protection of prosecutorial immunity in her discretionary decision not to inject her office into a closed case prosecuted by another district attorney's office, based solely upon plaintiff's claims concerning alleged misconduct in the Mangum prosecution.

Plaintiff filed a response on July 11, 2016 (DE 13), attaching copies of his letters to defendant Freeman (DE 13-1, 13-3, 13-5), as well as copies of newspaper articles about defendant Freeman's swearing-in as district attorney of Wake County (DE 13-2), and her office's dismissal of a case involving perjury by a law enforcement officer. (DE 13-4).  Defendant Freeman filed no response.  On August 11, 2016, plaintiff filed another document, captioned as a reply to a response by both defendants (DE 14); however, neither defendant has filed such a response.

## STATEMENT OF FACTS

The allegations in plaintiff's complaint may be summarized as follows.  Plaintiff identifies himself as a public advocate for Mangum, whom he believes has suffered injustice following her involvement as "victim/accuser" in a prosecution brought against several members of the

2

Duke University lacrosse team in 2006, which later was abandoned.[1] (DE 1 ¶¶ 1–2). Plaintiff's claim in the instant action refers to an unrelated case, also involving Mangum, in which Mangum was convicted of second-degree murder of Reginald Daye, in Durham County Superior Court, on November 22, 2013 ("Mangum prosecution"). Case No. 11-CRS-2607.[2] Plaintiff claims that a state medical examiner falsified Daye's autopsy report, and that several witnesses committed perjury during the Mangum prosecution. Some time after Mangum's murder conviction, plaintiff wrote letters and attempted to meet with defendant Freeman in order to encourage her to act upon his alleged exculpatory evidence, but, he alleges, defendant Freeman ignored his requests on the basis of race.[3]

In support of his claim that defendant Freeman ignored him on the basis of race, plaintiff relies upon anecdotal evidence of other racially motivated misconduct by North Carolina medical examiners (DE 1 ¶¶ 122–23); "systemic racism" in North Carolina, such as his being asked to leave

---

[1] Plaintiff's unsuccessful public efforts to compel state and federal officials to act upon his claims relating to alleged injustices in the 2006 prosecution served as the bases for two previous lawsuits plaintiff brought in the Middle District of North Carolina. See Harr v. North Carolina, No. 1:13-CV-673, 2014 WL 2212169 (M.D.N.C. May 28, 2014); Harr v. Brodhead, No. 1:11-CV-263, 2012 WL 719953 (M.D.N.C. Mar. 5, 2012). Plaintiff's first suit, in which he alleged that his constitutional rights were violated when he was asked to leave an event held at Duke University School of Law, was dismissed for failure to state a claim, and the court warned him against future frivolous filings. Harr v. Brodhead, 2012 WL 719953, at *2–3 (finding "the basis for [plaintiff's] claim is political animus," and warning "against further personal attacks on the Magistrate Judge or any judicial officer of the federal courts"). Plaintiff's second suit, based upon similar allegations, also was dismissed for failure to state a claim, and included sanctions and a second warning. Harr v. North Carolina, 2014 WL 2212169, at *9 ("Plaintiff's threat in his brief indicates a willful intent to harass the Duke Defendants even in the face of the overwhelming weakness of Plaintiff's legal position.").

[2] Following entry of judgment based upon a jury verdict finding Mangum guilty, she was sentenced to a minimum term of 170 months and a maximum term of 216 months imprisonment. Appeal from the Superior Court's judgment was denied by the North Carolina Court of Appeals on July 7, 2015. Case No. COA14-909.

[3] In addition to plaintiff's requests to defendant Freeman, he has made requests "to discuss the perjury and other wrongs of MANGUM's case [to] McCRORY and his general counsel, NC Lieutenant Governor Dan Forest, NC Attorney General's Office, WALKER, U.S. Attorney of the NC Middle District Ripley Rand, Durham District Attorneys Leon Stanback and Roger Echols, Orange County D.A. Jim Woodall, all North Carolina politicians in the General Assembly and on Capitol Hill, Legislative and Congressional Black Caucuses, NAACP and ACLU heads, and many others," none of whom are named as defendants here. (DE 1, 38).

an event held at Duke University School of Law (id. at 32–35); "[i]rrefutable perjury" by certain witnesses in the Mangum prosecution (id. at 31, 35–37); and suppression of his public allegations by "the mainstream media" due to its antipathy towards Mangum. (Id. at 39–40). In addition, plaintiff attached to his complaint the following documents: copies of his letters to defendant Freeman (DE 1-1, 1–6); annotated excerpts from an autopsy report relied upon in the Mangum prosecution (id. at 7); excerpts of transcripts of testimony from the Mangum prosecution (id. at 8); and an illustrated advertisement summarizing the alleged exculpatory evidence, captioned "The North Carolina justice system is corrupted and has been hijacked*!!*" (Id. at 9).

Plaintiff requests relief in the form of a judgment which overturns Mangum's state court conviction for second-degree murder, attributes her wrongful conviction to certain witnesses' perjury, and censures defendant Freeman for failing to act upon plaintiff's claims. Alternatively, if the court declines to grant this relief, then plaintiff requests that Mangum receive a new trial on all charges related to her involvement in Daye's death, and that the court order defendant Freeman to meet with plaintiff in order to address his claims in good faith. Lastly, plaintiff seeks costs, "compensation for his efforts in filing this complaint," and any other reasonable financial compensation as determined by the court. (DE 1, 42).

## DISCUSSION

A. Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain,

4

697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B. Analysis

Plaintiff's broad claim against defendant Freeman may be divided into two parts: first, his claim that defendant Freeman violated his civil rights by refusing to meet with him on the basis of

5

race; and second, his claim that defendant Freeman's refusal improperly blocked his request that Mangum's conviction be overturned or her case retried.[4]

   1.   Prosecutorial Immunity

Prosecutors are absolutely immune when carrying out prosecutorial functions. See Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993). Actions specifically found to be protected by prosecutorial immunity include the "professional evaluation of the evidence assembled by the police," Buckley, 509 U.S. at 273, the decision of whether to proceed with a prosecution, Springmen v. Williams, 122 F.3d 211, 212–13 (4th Cir. 1997), and even "the knowing use of false testimony at trial and the deliberate suppression of exculpatory evidence." Burns v. Reed, 500 U.S. 478, 486 (1991).

In addition, the law provides absolute immunity from liability for activities conducted by "an officer of the court," including a prosecutor, as a long as the conduct at issue is closely associated with a judicial phase of the criminal process. Van de Kamp v. Goldstein, 555 U.S. 335, 341–43 (2009); Puckett v. Carter, 454 F. Supp. 2d 448, 452 (M.D.N.C. 2006) ("[P]rosecutors enjoy absolute

---

[4] Notwithstanding plaintiff's invocation of the court's jurisdiction under 28 U.S.C. §§ 1331 and 1343, the court construes plaintiff's claim as being brought pursuant to 42. U.S.C. § 1983, which provides for claims of deprivation of constitutional rights such as those alleged by plaintiff. See § 1983. By way of contrast, section 1343 provides only for claims of conspiracies to interfere with civil rights by "two or more persons," which is inapplicable to claims naming one individual and relying upon conclusory statements of a broader conspiracy, such as plaintiff's claim. See § 1985(a); Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Moreover, plaintiff concedes that his complaint does not allege facts sufficient to support a conspiracy. (See DE 13, 12) ("PLAINTIFF's inability to evidentiary [sic] and fully support a media conspiracy against MANGUM or PLAINTIFF is beyond the purview of his present complaint.").
   Plaintiff acknowledges a distinction between his claim against defendant Freeman for refusing to meet with him on the basis of race, and his claim that her refusal improperly blocked his efforts to overturn Mangum's murder conviction or to win retrial of her case. (See id. at 13). However, plaintiff seems not to recognize that defendant Freeman's motion seeks to dismiss his complaint in both respects. (See id.) ("True, PLAINTIFF does seek, from this Court, justice for MANGUM on an issue of undeniable criminality . . . . [But] [e]ven if this Complaint lacks the ability to redress wrongs in the state case against MANGUM, it should not have negative bearing on the viability of this case.").

6

immunity from civil suits for damages for actions taken while performing traditional prosecutorial duties."); see also Manteen-El v. Price, No. 3:15-CV-58-FDW, 2015 WL 631382, at *3 (W.D.N.C. Feb. 12, 2015) (dismissing § 1983 claim against defendant district attorneys because they were entitled to prosecutorial immunity for claims arising from their prosecution of a plaintiff in state court).

Here, plaintiff alleges that defendant Freeman violated his civil rights where she was "derelict in her duty as an officer of the court by her willful dismissal of PLAINTIFF's conspicuous warnings," due to an alleged desire for "her black constituent MANGUM [to] rot in jail . . . in order to protect Duke University Hospital's reputation and shield [the state medical examiner] from prosecution." (DE 1, 3; 13, 22). However, defendant Freeman's actions in deciding whether to meet with plaintiff in order to pursue actions to reopen the Mangum prosecution fall within the category of prosecutorial tasks protected by the doctrine of absolute immunity. See Imbler, 424 U.S. at 431 n.33 (extending immunity to actions "preliminary to the initiation of a prosecution and actions apart from the courtroom"). In particular, defendant Freeman's decision not to investigate further plaintiff's evidentiary claims is analogous to the prosecutorial task of factual investigation required for determining whether to go forward with a prosecution, which is "squarely cover[ed]" by prosecutorial immunity. Springmen, 122 F.3d at 212–13. Accordingly, defendant Freeman performed a prosecutorial task in exercising her discretion not to meet with plaintiff to explore further his evidentiary allegations related to the Mangum prosecution. See Imbler, 424 U.S. at 431. Therefore, defendant Freeman's conduct is protected by absolute prosecutorial immunity; and plaintiff's complaint, inasmuch as it is based upon defendant Freeman's refusal to meet with him, must be dismissed pursuant to Rule 12(b)(6). See id.

Plaintiff's arguments in opposition are unavailing. He asserts that "a prosecutor has an obligation to hear claims of post-conviction innocence," that "county boundary lines should not prevent important exculpatory evidence from passing from one district attorney to a neighboring district attorney," and that "[i]t can readily be assumed, without any evidence to the contrary from DEFENDANT, that DEFENDANT's discretion to refuse to communicate with PLAINTIFF was discriminatory because PLAINTIFF is black." (DE 13, 23–24). However, plaintiff misconstrues the scope of defendant Freeman's duties as a prosecutor, and her discretionary judgment in the course of performing those duties. See Springmen, 122 F.3d at 213 ("A prosecutor is duty bound to exercise his best judgment [ ] in deciding which suits to bring."). For example, it was within the scope of defendant Freeman's prosecutorial duties to dismiss plaintiff's letters claiming evidence of alleged post-conviction innocence as part of her decision on whether to reopen investigation into Mangum's conviction, see Buckley, 509 U.S. at 273; Van de Kamp, 555 U.S. at 341–43, especially given the conclusory nature of plaintiff's alleged exculpatory evidence. For example, plaintiff submitted in support of his complaint an annotated copy of an autopsy report allegedly relied upon in the Mangum prosecution. (DE 1-1, 7). Next to the report's certification section that states, "Cause of Death[:] Complication of stab wound to chest," is plaintiff's conclusory annotation, "True proximate cause of death was an esophageal intubation for the treatment of DTs which led to brain death. Daye's death had nothing to do with a stab wound or any complications from it." (Id.).

Similarly, defendant Freeman's decision of whether or not to transfer to another district attorney plaintiff's alleged exculpatory evidence represents a prosecutorial task related to pre-trial case management, and as such, also is protected by prosecutorial immunity. See Van de Kamp, 555 U.S. at 341–43. Plaintiff concedes that the decision to make such a transfer represents a

8

prosecutorial task; instead, it is the outcome of defendant Freeman's decision that he contests. (See DE 13, 9) ("Had DEFENDANT or one of her assistants met with PLAINTIFF, and referred his complaint and evidence to another supposedly more appropriate district attorney . . . then PLAINTIFF would not have found any fault with DEFENDANT and not filed a complaint against her.").

Lastly, plaintiff's conclusory allegation that defendant Freeman's actions were motivated by racial animus is supported only by his anecdotal accounts of other state and federal government officials' racially motivated misconduct, and therefore is insufficient to show that defendant Freeman acted unreasonably in deciding not to allocate time and resources to exploring plaintiff's alleged exculpatory evidence. See Springmen, 122 F.3d at 213. Plaintiff's argument that defendant Freeman fails to provide evidence of non-discriminatory intent is inapposite, where plaintiff bears the burden to allege facts sufficient to state a claim to relief that is plausible on its face. See Twombly, 550 U.S. at 556, 570. Accordingly, plaintiff's arguments fail to overcome defendant Freeman's absolute prosecutorial immunity in her decision not to meet with him to discuss his alleged exculpatory evidence related to the Mangum prosecution. See Springmen, at 213–14.

2. Standing

Plaintiff claims that defendant Freeman's refusal to meet with him impermissibly blocked his attempts to "seek, from this Court, justice for MANGUM on an issue of undeniable criminality (harmful perjured testimony and fraudulent autopsy report by the medical examiner)." (DE 13, 13, 25). Defendant Freeman argues, in part, that plaintiff fails to allege an injury-in-fact, and that he lacks standing to bring this action on behalf of Mangum. The court agrees.

9

To satisfy Article III's standing requirements, a plaintiff must show that: 1) he has suffered an injury-in-fact; 2) the injury is fairly traceable to the challenged action of defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 320 (4th Cir. 2002). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see also Cooksey v. Futrell, 721 F.3d 226, 235 (4th Cir. 2013). However, alleging an injury-in-fact sufficient to support standing "does not create a coordinate right to litigate for others." Myers v. Loudoun Cty. Pub. Schs., 418 F.3d 395, 400 (4th Cir. 2005); see Smith v. Frye, 488 F.3d 263, 272 (4th Cir. 2007) ("[U]nder Article III of the United States Constitution, a plaintiff . . . cannot rest his claim to relief on the legal rights or interests of third parties.").

Here, plaintiff concedes that his alleged injury primarily relates to defendant Freeman's refusal to meet with him, and that "[a]lthough MANGUM is also victimized by DEFENDANT ignoring PLAINTIFF's efforts at communing [Mangum's sentence], her (MANGUM's) injury is not the focus of this filing." (DE 13, 6). Nonetheless, plaintiff argues that he also suffered injury from Mangum's conviction, specifically from "the prolonged and unjust incarceration of [Mangum,] an innocent black individual . . . . causing PLAINTIFF profound grief." (Id. at 13, 25).

Plaintiff's somewhat contradictory and conclusory allegations fail to show an injury-in-fact. Defendant Freeman's refusal to discuss with plaintiff his disappointments and doubts concerning the Mangum prosecution does not harm plaintiff's legally protected interests, see Lujan, 504 U.S. at 560, where, for the reasons described above, defendant Freeman acted within the scope of

10

protected prosecutorial immunity, and where plaintiff fails to allege facts sufficient to show that she acted with racial animus. See Springmen, 122 F.3d at 213. Nor does plaintiff allege invasion of a legally protected interest that it is particularized, see Lujan, 504 U.S. at 560, where he claims only that defendant Freeman refused his requests for "assistance in helping Mangum receive the justice to which she and all Tar Heelians are entitled." (DE 1-1, 2). Accordingly, plaintiff fails to allege an injury-in-fact sufficient to support his standing to bring this action. See Friends of the Earth, Inc., 528 U.S. at 180–81.

To the extent plaintiff seeks to bring a claim pertaining to the Mangum prosecution on Mangum's behalf, plaintiff's claim also fails. Plaintiff argues that "a close relationship existed between PLAINTIFF and MANGUM that is worthy of granting third-party standing." (DE 13, 6). Notwithstanding his social relationship with Mangum, plaintiff's legal status as an individual who was not party to the Mangum prosecution, or otherwise related to Mangum, renders him without standing to litigate this action on Mangum's behalf. See Smith, 488 F.3d at 272 ("[A plaintiff] cannot rest his claim to relief on the legal rights or interests of third parties."). Even if plaintiff were to allege an injury-in-fact sufficient to support his own standing, "[t]he right to litigate for oneself, . . . does not create a coordinate right to litigate for others." Myers, 418 F.3d at 400. Accordingly, plaintiff's argument for third-party standing fails. See Smith, 488 F.3d at 272.

In sum, plaintiff fails to allege an injury-in-fact sufficient to support his standing to bring an action based upon defendant Freeman's refusal to meet with him, see Friends of the Earth, Inc., 528 U.S. at 180–81, and he lacks third-party standing to litigate an action on Mangum's behalf. See Smith, 488 F.3d at 272. Therefore, plaintiff's complaint as it relates to defendant Freeman's refusal

11

to meet with him to discuss alleged exculpatory evidence relating to Mangum's conviction must be dismissed pursuant to Rule 12(b)(1). See Bain, 697 F.2d at 1219.

**CONCLUSION**

For the reasons explained above, defendant Freeman's motion to dismiss is GRANTED. (DE 10). The clerk is directed to close this case.

SO ORDERED, this the 15th day of August, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge